July 5, 1902. The opinion of the Court was delivered by
The appeal herein is from an order of nonsuit granted on the ground that no evidence was introduced of the written assent to the contract on the part of the Green Pond, Walterboro and Branchville Railway Co. The first and second paragraphs of the complaint allege the corporate existence of the plaintiff and defendant; the other allegations of the complaint are as follows:
"3. That on the 5th day of January, A.D. 1897, the plaintiff and the defendant entered into another contract, *Page 384 
whereby the defendant, upon sufficient consideration, contracted and agreed to and with the plaintiff to furnish for shipment over the railroad of the plaintiff during the continuance of such contract not less than 600,000 feet of lumber per month.
"4. That said contract went into effect and became operative on the 25th day of March, 1897, and has been in full force and effect ever since that time.
"5. That the defendant has failed and neglected to furnish for shipment over the railroad of the plaintiff 600,000 feet of lumber per month for the first three months under said contract, commencing on the 25th day of March, 1897, and ending on the 25th day of June, 1897, the defendant having furnished for shipment over the railroad of the plaintiff during the said period of three months only 1,039,216 feet of lumber.
"6. That the plaintiff was to be paid as its proportion of the freight charges for hauling and transporting said lumber the sum of 60 75-100 cents per thousand feet; that the plaintiff's costs and expenses to haul and transport the said lumber, which the defendant failed and neglected to ship for the said period of three months, would have been small and inconsiderable, amounting to not more than $50; that by reason of the defendant's failure to furnish for shipment over the railroad of the plaintiff 600,000 feet of lumber per month for each of said three months, this plaintiff has been damaged to its injury $412.17."
The answer of the defendant admitted the allegations contained in the first and second paragraphs of the complaint, but denied each and every other allegation thereof, and set up the following defense: "For a second defense herein: Denies that defendant has furnished for shipment over the railroad of plaintiff during the time mentioned in complaint only the amount of lumber specified in complaint, and alleges that the defendant has furnished for shipment over the said railroad under the said contract 600,000 feet of lumber per month during the time mentioned in complaint." *Page 385 
The defendant's attorney served the following notice: "Please take notice that at the trial of each of the three causes entitled as above, the defendant will introduce certified copies or other secondary evidence of the following documents and instruments in writing, in case you fail to produce for evidence the originals thereof:
"1. Articles of agreement between the Walterboro and Western Railway Co. and the Hampton and Branchville Railroad and Lumber Co., in regard to shipping wares, merchandise, lumber and freights, and as to divers other matters, dated January 5th, 1897.
"2. The memorandum of agreement in writing, which was drawn up previously to the above mentioned agreement, and which was the basis of the said above mentioned agreement.
"3. Letter directed to J.R. Stokes, Esq., President W. 
W. Railroad Company, dated at Savannah, Ga., January 30, 1897, and signed `F.B. Papy, Genl. Freight Agent,' relating to matters connected with the agreement first above named."
The contract was introduced in evidence and marked "Ex. A." The ninth clause thereof is as follows: "9. That this contract being first assented to in writing by the Green Pond, Walterboro and Branchville Railway Co. and Charleston and Savannah Railway Co., shall go into effect immediately upon the loading of the vessel chartered by Campbell Shirer to be loaded at Port Royal, and for the loading of which the party of the second part has to furnish about 108,000 feet of lumber, and shall continue in full force and effect, subject to all the stipulations and reservations herein contained, for a period of eighteen months from the date upon which the same goes into effect."
The record contains the following: "Counsel for plaintiff now wishes to introduce in evidence a letter. Counsel for defendant stated that it should first be proved that Mr. Papy has the position he signs there, and had the authority to make this assent. Counsel for plaintiff states that when a party *Page 386 
is served with notice to introduce in evidence a certain paper, he cannot be required to prove the execution, nor can the party who requires him to produce it object to it. It has been expressly held by our Supreme Court, and is the law, so far as I know, in every State. They have given us notice to produce these papers, and I offer them in evidence. The Court, after hearing argument, stated: After hearing those authorities, I am inclined to think Mr. Gruber is right. I will allow it, and note an exception. I rule that a paper having been called for and inspected under the authorities, I am inclined to think Mr. Gruber has the right to produce it without formal proof. Exhibits `B' and `C' introduced in evidence as follows: `Plant System, Savannah, Ga., Jany. 30th, 1897. J.R. Stokes, Esq., Prest. W.W.R.R. — Dear Sir: Your superintendent handed me the agreement between the W. W.R.R. and the H.B.R.R., and stated that they were ready to execute it as soon as Mr. Mauldin was. As I told you personally, there are many matters embraced in the agreement that this system or the C. S. Ry. should not be a party to; they relate entirely to matters local between yourselves. The C. S. Ry. is only interested in that agreement so far as it relates to the rates of freight and divisions of the same. I am authorized by my management to say that we approve of the contract so far as it relates to any matter in which the C. S. Ry. is a party, and that you can file this letter with the contract as a part of the same. After you have executed the contract, please send me a copy. Very truly yours, F.B. Papy, Genl. Freight Agent.'
"`To J.R. Stokes, Walterboro, S.C. Subject: Referring to my letter handed Mr. Fincken with the P. and B. contract, the C. S. and G.P.W. B. Ry. Co. agree to be bound by this contract as per your telegram, which was the object of this letter. F.B. Papy.'"
There is testimony to the effect that the plaintiff and the defendant commenced to operate under said contract on the 25th day March, 1897. The following appears in the record: *Page 387 
"Plaintiff rests. Gen. Moore, for defendant: At this stage, we move for a nonsuit. The plaintiff rests his case on this contract. There is a clause in this contract which provides, it is the ninth clause, that before it shall go into effect, it must be first assented to in writing by the Green Pond, Walterboro and Branchville Railway Co. and the Charleston and Savannah Railway Co. That is a provision of the contract. It is the condition precedent, and until that condition precedent is satisfied, the contract cannot go into force. The plaintiffs, in proving their contract, are obliged to prove the assent of the Charleston and Savannah Railway Co. and by the Green Pond, Walterboro and Branchville Railroad Co. They have attempted to do that by the evidence they have submitted, and I submit they have not proved the assent in writing which they should have proved. The assent of a corporation can be proved by the duly accredited and authorized agents of the corporation, and it is the business of the party proving the assent to show that they are the duly accredited agents of the corporation by some act showing that the particular individual who claims to have acted in making the contract had the power to make the contract. I submit, further, that the letter of Mr. Papy is dated January 30th, '97, and the contract, by Mr. Fincken's testimony, was not signed until the 15th of March following; so that at the time that assent was made there was no contract in existence. Mr. Gruber argued in opposition to the motion, contending that the assent of the Green Pond. Walterboro and Branchville Co. had been shown, that the existence of the contract was admitted, and the proof showed that the parties had operated under its terms; that the telegram showing such assent was in evidence, but if not properly proved, then he asked to be allowed to offer such proof. The Court: A motion is made for a nonsuit on the grounds stated by Gen. Moore. I think I will have to grant the nonsuit on this ground: That this contract shows that it must be assented to in writing by the Green Pond, Walterboro and Branchville Railroad Co., and there is nothing to show that they did. *Page 388 
There is sufficient testimony to go to the jury, in my opinion, that the Charleston and Savannah Railway Co., by parties properly authorized — there is enough testimony to go to the jury that it has assented; and if there was any way in the world in which I could let Mr. Gruber prove that telegram, I would let him; but the mere fact that Mr. Stokes got the telegram would not be sufficient. They would have to hunt up the operator to prove it, and I cannot delay the Court. So on the ground solely of there being no proof before me at all that the Green Pond, Walterboro and Branchville Railroad Co. has assented in writing to the contract, I will grant a nonsuit. They rely on a written contract here and I grant a nonsuit on that ground." Thereupon his Honor granted an order of nonsuit on the ground just mentioned.
It will not be necessary to consider the exceptions in detail. It will be observed that the presiding Judge did not rule that the letter and telegram were insufficient evidence of assent in writing, on the part of the Green Pond, Walterboro and Branchville Railway Co., to the terms of the contract. On the contrary, it appears that he would have ruled that they were sufficient, if he had regarded them as properly before the Court for consideration. The record discloses the fact that the letter and the telegram were offered in evidence, and after the ruling of the Circuit Judge, were introduced in evidence as exhibits "B" and "C." They were, therefore, properly before the Court for consideration at the time his Honor granted the nonsuit; and, as they tended to show compliance by the Green Pond, Walterboro and Branchville Railway Co. with the conditions mentioned in the ninth clause of the contract, the order of nonsuit was erroneous.
Furthermore, by reference to the pleadings, it will be seen that they do not raise the issue as to the performance of said condition by the railroad company mentioned in the ninth clause of the contract; and as there was testimony tending to prove all the allegations of the *Page 389 
complaint put in issue by the answer, the nonsuit was erroneous for this reason likewise.
It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.